**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**HOWARD BODDIE, JR.,**

      **Petitioner,**

                          **Case No. 2:16-cv-820**

      **v.**                      **JUDGE MICHAEL H. WATSON**
                                      **Magistrate Judge King**

**STATE OF OHIO,**

      **Respondent.**

**ORDER and**
**REPORT AND RECOMMENDATION**

Petitioner, a former state prisoner who is currently under the supervision of the Ohio Adult Parole Authority, brings this action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1] This matter is before the Court on the *Petition* (Doc. 1); *Respondent's Motion to Dismiss or, in the Alternative, Answer/Return of Writ* (Doc. 8); *Petitioner's Contra Motion to Respondent's Motion to Dismiss, Motion for Appointment of Counsel, Motion for Release of Exculpatory Evidence* (Doc. 9); *Respondent's Reply to Petitioner's Opposition to Respondent's Motion to Dismiss, and Respondent's Opposition to Petitioner's Motions for Appointment of Counsel and Release of Exculpatory Evidence* (Doc. 10); *Respondent's Notice of Supplement to the Record* (Doc. 11); *Petitioner's Opposition to Respondent's Motion to Dismiss and Motion for Evidentiary Hearing* (Doc. 13); *Petitioner's Notice of Supplement to the Record* (Doc. 14); *Respondent's Motion to Strike Petitioner's Notice of Supplement to the Record* (Doc. 15); *Petitioner's Motion in Opposition to Strike Karen T. Monroe's Health Care Power of Attorney*

---

[1] The Ohio Adult Parole Authority, the agency having custody of Petitioner for purposes of this action, is the proper Respondent. *See* Rule 2 of the Rules Governing Section 2254 Cases in the United States District Court, Adv. Comm. Notes ("The named respondents shall be the particular probation or parole officer responsible for supervising the application, and the official in charge of the parole or probation agency, or the state correctional agency, as appropriate.") .

*Filed in Petitioner's Notice of Supplement to the Record* (Doc. 16), and the exhibits of the parties.

For the reasons that follow, the Magistrate Judge **RECOMMENDS** that Respondent's motion to dismiss (Doc. 8) be **GRANTED** and that this action be **DISMISSED.**

Petitioner's motions for the appointment of counsel, for the release of exculpatory evidence, and for an evidentiary hearing (Docs. 9, 13) are **DENIED**.

Respondent's *Motion to Strike Petitioner's Notice of Supplement to the Record* (Doc. 15) is **GRANTED**.

### Facts and Procedural History

The procedural history has been previously outlined by this Court, *see Boddie v. Warden*, *Chillicothe Correctional Institution*, No. 2:14-cv-226, *Report and Recommendation* (Doc. 27), but is repeated herein as follows:

> On May 6, 2008, a Franklin County Grand Jury indicted appellant on one count of domestic violence in violation of R.C. 2919.25 and one count of abduction in violation of R.C. 2905.02, both felony offenses. Appellant entered a not guilty plea to the charges. Eventually, a jury found appellant guilty of both charges on May 27, 2010. The trial court sentenced appellant accordingly.
>
> Appellant appeals and assigns the following errors:
>
> I.  APPELLANT'S RIGHT TO A SPEEDY TRIAL WAS VIOLATED UNDER OHIO LAW AS WELL AS THE OHIO AND FEDERAL CONSTITUTIONS WHEN NUMEROUS DELAYS OCCURRED PRIOR TO HIS TRIAL.
>
> II. APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL CONTRA HIS RIGHTS UNDER THE OHIO AND FEDEAL CONSTITUTIONS.

*State v. Boddie*, No. 10AP-687, 2011 WL 2586717, at *1 (Ohio App. 10th Dist. June 30, 2011).

On June 30, 2011, the appellate court affirmed the judgment of the trial court. *Id.* Petitioner did

not file a timely appeal. On November 10, 2011, he filed a motion requesting the transcripts of *voir dire* proceedings, and of competency and bond hearings. (Doc. 8-1, PageID# 406). On January 4, 2012, the trial court denied Petitioner's requests. *Entry* (PageID# 412). On April 25, 2016, Petitioner filed a *Motion for Delayed Appeal*. (Doc. 8-1, PageID# 575). On June 15, 2016, the Ohio Supreme Court denied the motion and dismissed the appeal. *State v. Boddie*, 146 Ohio St.3d 1414 (Ohio 2016); (PageID# 589).

On June 20, 2012, petitioner filed a *pro se* motion to reopen his appeal pursuant to Rule 26(B) of the Ohio Rules of Appellate Procedure, again asserting the denial of a speedy trial and the ineffective assistance of trial counsel. (Doc. 8-1, PageID# 189). On September 25, 2012, the Ohio Tenth District Court of Appeals denied petitioner's motion as untimely and without merit. (Doc. 8-1, PageID# 297). Petitioner filed a timely appeal from that decision. (Doc. 8-1, PageID# 305). He also filed, on December 12, 2012, a motion to take judicial notice and request for a copy of the transcripts of *voir dire* proceedings. (PageID# 327). On February 6, 2013, the Ohio Supreme Court dismissed the appeal and denied as moot Petitioner's motion to take judicial notice and to provide a complete copy of *voir dire* transcripts. (PageID# 337); *State v. Boddie*, 134 Ohio St.3d 1451 (Ohio 2013).

> On July 26, 2011, appellant filed a "petition to vacate or set aside judgment of conviction or sentence." Therein, appellant again claimed that he had been denied the effective assistance of trial counsel. He also alleged that law enforcement threatened to pursue criminal charges against the victim if she refused to testify against him, and in turn, she committed perjury. Appellant asserted that the victim's health history and prior criminal convictions affected her credibility. Appellant attached several unsworn documents to his petition. Among these documents were letters that appellant claimed were written by the victim, including one in which the victim stated that appellant "did not abduct" her. (R. 213.)
>
> On June 1, 2012, appellant filed a "motion to vacate sentence," which again raised an ineffective assistance of trial counsel claim and also alleged he was denied his right to a speedy trial.

On September 8, 2011, without holding a hearing, the trial court denied the July 26, 2011 petition because the issues raised by appellant were barred by the doctrine of *res judicata*. The trial court also denied appellant's June 1, 2012 motion to vacate his sentence on August 15, 2012 without holding a hearing. The court reasoned that *res judicata* precluded appellant from raising the issue of a speedy trial violation, and he failed to support the substantive requirements for his ineffective assistance of counsel claim. Appellant appealed from the judgments of the trial court, and this court consolidated the appeals.

\*\*\*

Appellant assigns three errors for our consideration:

> [I.] Appellant contends that the trial court committed plain and prejudicial error, and denied him due process and equal protection of law when the trial court denied appellant's motion for post-conviction relief without (1) holding a formal hearing/evidentiary hearing on his misconduct claims, and (2) for denying the petition without providing findings of facts and conclusions of law in violation of appellant's U.S. constitutional rights to meaningful access-to-the court founded under the 1st, and 14th amendments.

> [II.] Appellant contends that he was denied due process and meaningful access-to-the-courts when the trial court denied appellant's post-conviction motion on *res -judicata* grounds in violation of appellant's 1st and 14th amendment rights under the United States Constitution.

> [III.] Appellant contends that the trial court violated his constitutional rights to meaningful access-to-the courts, due process, and equal protection of law under the 1st and 14th amendments to the U.S. Constitutions when the court deliberately ignored evidence presented that appellant suffered ineffective assistance of counsel at trial.

*State v. Boddie*, Nos. 12AP-811, 12AP-812, 2013 WL 4973012, at \*1-3 (Ohio App. 10th Dist. Sept. 12, 2013). On September 12, 2013, the appellate court affirmed the judgment of the trial court. *Id*. Petitioner apparently did not file an appeal from that decision to the Ohio Supreme Court.

However, on October 15, 2012, Petitioner filed a petition for a writ of habeas corpus with the Supreme Court of Ohio. (Doc. 8-1, PageID# 530). On November 28, 2012, the Ohio Supreme Court *sua sponte* dismissed that action. (PageID# 572).

On March 3, 2014, Petitioner filed his first federal habeas corpus petition pursuant to 28 U.S.C. § 2254. *Boddie v. Warden*, *Chillicothe Correctional Institution*, No. 2:14-cv-226 (S.D. Ohio). On September 17, 2015, this Court dismissed that action without prejudice as unexhausted. *Id., Judgment* (Doc. 32). Petitioner filed a notice of appeal from that decision, *id., Notice of Appeal* (Doc. 24), but this Court and the United States Court of Appeals for the Sixth Circuit declined to issue a certificate of appealability. *Id., Order* (Doc. 41); *Boddie v. Jenkins*, No. 15-4153 (6th Cir. Mar. 25, 2016). On July 8, 2016, Petitioner filed a *Notice of Exhaustion of Claim Six and Motion for a Certificate of Appealability and Motion for Appointment of Counsel. See id.*, *Judgment* (Doc. 38). The Court denied Petitioner's motion and directed him to file a new petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. *Id.* (Doc. 41).

On August 25, 2016, Petitioner filed this habeas corpus petition. He alleges that the trial court improperly denied his petition for post conviction relief without conducting an evidentiary hearing (claim one); that the trial court abused its discretion and denied him access to the courts and due process by denying his post conviction claims as barred under Ohio's doctrine of *res judicata* (claim two); that he was denied due process and equal protection by the Ohio Supreme Court's failure to provide him with a transcript of *voir dire* proceedings, and that the prosecutor and defense counsel during *voir dire* tainted the jury and caused juror bias (claim three); that he was denied a fair trial by the prosecutor's use of false and perjured testimony and that he was denied his right to a speedy trial (claim four); that he was denied access to the courts, equal protection of the law, and due process due to the Ohio Supreme Court's refusal to permit the

filing of an untimely appeal in post conviction proceedings (claim five); that he was denied the effective assistance of trial counsel based on his attorney's failure to conduct pre-trial consultation and investigation (claim six); that he was denied the right to a fair trial, due process, and equal protection of the law, and the right of confrontation due to the fraudulent concealment of exculpatory and impeachment evidence (claim seven); that the evidence is constitutionally insufficient to sustain his convictions on domestic violence and abduction (claims eight and nine); and that he was convicted in violation of the Fourth Amendment (claim ten).  Respondent contends that the Court should dismiss this action as barred by the one-year statute of limitations under 28 U.S.C. § 2244(d) and, alternatively, that Petitioner's claims are procedurally defaulted or otherwise fail to provide a basis for federal habeas corpus relief.

### Motion to Strike Petitioner's Notice of Supplement to the Record

On November 9, 2016, Petitioner filed a *Notice of Supplement to the Record,* to which he attached what appears to be a document indicating that, on November 3, 2016, Karen Monroe, the alleged victim, gave him the power of attorney to make health care decisions on her behalf. (Doc. 14, PageID# 989-99).   Petitioner apparently seeks to expand the record to make this document a part of the record in this case.   Respondent opposes any such expansion of the record, arguing that the document is not relevant to these proceedings and that, in any event, the Court must limit its review to the record that the state courts considered when it adjudicated Petitioner's claims.   *Respondent's Motion to Strike Petitioner's Notice of Supplement to the Record* (Doc. 15)(citing  *Cullen v. Pinholster*, 563 U.S. 170, 180-81 (2011)).

Petitioner insists that evidence indicating that Monroe granted him a power of attorney over her health care decisions in November 2016 supports his allegation that his prosecution was based on improper motives and denied him due process, equal protection and the effective

assistance of counsel.  In support of this argument, Petitioner refers to portions of the trial transcript indicating that Monroe had granted Petitioner the power of attorney to make end of life health care decisions on her behalf, but that the trial court prohibited Petitioner from testifying regarding Monroe's alleged psychiatric hospitalizations, HIV condition, or other health issues. *See, e.g., Transcript* (Doc. 8-3, PageID# 803-08).  Petitioner also refers to a letter written by him to Monroe on April 23, 2008, which was admitted as evidence against him at trial. *See id.* (Doc. 8-3, PageID# 663).  According to Petitioner, the State denied him access to that document until May 2011.  *See Petitioner's Motion in Opposition to Strike Karen T. Monroe's Health Care Power of Attorney Filed in Petitioner's Notice of Supplement to the Record* (Doc. 16).

This Court is not persuaded that the November 2016 document attached to Petitioner's *Notice of Supplement to the Record*  is relevant to the claims asserted in this action.   Whether Monroe granted Petitioner a health care power of attorney in November 2016 – years after the incident at issue and the trial in this case – simply has no relevance to this Court's determination of the timeliness of the action or whether Petitioner's claims are procedurally defaulted or fail to state a claim for federal habeas corpus relief.  Further, Respondent correctly notes that this Court is constrained by the Supreme Court's decision in *Pinholster* to limit its review to the record that was before the state court.

Therefore, *Respondent's Motion to Strike Petitioner's Notice of Supplement to the Record* (Doc. 15) is **GRANTED**.

### Motion for the Appointment of Counsel and an Evidentiary Hearing

Petitioner requests the assistance of Court appointed counsel in these proceedings and seeks an evidentiary hearing on his claims. (Docs. 9, 13).

Habeas corpus proceedings are considered to be civil in nature, and the Sixth Amendment does not guarantee the right to counsel in such proceedings. *McCleskey v. Zant,* 499 U.S. 467, 495 (1991)(no constitutional right to counsel in federal habeas); *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987)(no right to counsel beyond first appeal of right); *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)("habeas corpus proceedings are civil in nature")). *See also Hoggard v. Purkett*, 29 F.3d 469, 471 (8th Cir. 1994)(citing *Boyd v. Groose*, 4 F.2d 669, 671 (8th Cir. 1993)). "Never has it been held that there is a constitutional right to counsel in a habeas action." *Id.* at 471 (citing *Blair v. Armontrout*, 916 F.2d 1310, 1332 (8th Cir. 1990); *Johnson v. Avery*, 393 U.S. 483, 488 (1969)). Rather, "[t]he decision to appoint counsel for a federal habeas petitioner is within the discretion of the court and is required only where the interests of justice or due process so require." *Mira v. Marshall*, 806 F.2d 636, 638 (6th Cir. 1986)(citations omitted); 18 U.S.C. § 3006(a)(2)(B). Specifically, the appointment of counsel is required where an evidentiary hearing is necessary to resolve a petitioner's claims. *See* Rule 8 of the Rules Governing Section 2254 Cases in the United States District Courts. In determining whether to exercise its discretion in favor of appointing counsel on a petitioner's behalf, a court should consider "the legal and factual complexity of the case, the petitioner's ability to investigate and present his claims, and any other relevant factors." *Mathews v. Jones*, No. 5:13-cv-1850, 2015 WL 545752, at *3 (N.D. Ohio Feb. 10, 2015)(citations omitted).

Petitioner contends that counsel should be appointed in these proceedgings because he has been denied the effective assistance of counsel in state court proceedings. With proper representation and investigation by counsel, Petitioner argues, he can establish that he is actually innocent of the charges against him and that he has presented meritorious claims for relief. However, arguments such as these are not atypical in habeas corpus proceedings and do not

warrant the appointment of counsel on Petitioner's behalf. Moreover, the record does not indicate that an evidentiary hearing will be required to resolve any of the issues presented in this action. As discussed below, Petitioner's claims are procedurally defaulted or otherwise plainly fail to provide a basis for relief. Moreover, the record does not indicate that this case is so unduly complex that the interests of justice or notions of due process require the appointment of counsel on Petitioner's behalf. To the contrary, the record indicates that Petitioner has capably initiated numerous state court actions on his own behalf and has more than adequately presented his arguments in these proceedings.

Petitioner's request for the appointment of counsel and for an evidentiary hearing (Docs. 9, 13), are **DENIED**.

## Motion for Release of Exculpatory Evidence

Petitioner claims that Respondent intentionally concealed exculpatory evidence; he requests that Respondent be ordered to provide a copy of the transcripts of *voir dire* proceedings and the 9-1-1 tapes made in the early morning hours of April 16, 2008, *i.e.*, the date on which the offenses are alleged to have occurred. (Doc. 9). Petitioner also seeks the Court's determination of alleged speedy trial violations during the period April 16, 2008 to May 24, 2010. *Petitioner's contra Motion to Respondent's Motion to Dismiss, Motion for Appointment of Counsel, Motion for Release of Exculpatory Evidence* (Doc. 9, PageID# 949).

Petitioner seeks production of a copy of the *voir dire* transcripts as relevant to his claim that he was denied the effective assistance of counsel. He alleges that, on May 25, 2010, during the course of *voir dire*, his attorney engaged in racially charged dialogue with several jurors, inappropriately drawing an inflammatory and "volatile comparison" between this case and the murder trial of O.J. Simpson, and failed to object to the prosecutor's reference to a movie called

"The Burning Bed." *Id.* (Doc. 9, PageID# 950).  Petitioner also raises a claim that his attorney and the prosecutor conspired to violate *Batson v. Kentucky*, 476 U.S. 79 (1986), by removing an African American woman from the jury pool. *Id.* (PageID# 950-51).  Petitioner contends, too, that a copy of the *voir dire* transcripts will help him to establish that he was denied due process and was the victim of a manifest miscarriage of justice. *Id.*  (PageID# 951).  According to Petitioner, the State has unconstitutionally refused, to date, to provide him with a free copy of the transcripts of *voir dire* proceedings, thereby denying him equal protection, due process, and meaningful access to the courts.  *Id.*  Petitioner specifically refers to habeas corpus claim eight, in which he alleges that the evidence was constitutionally insufficient to sustain his conviction on the domestic violence charge. He also alleges juror bias: "[A] juror name[d] Mr. Rink spoke to Ms. Monroe and told her that all jurors were out to help her.  After this fact [M]r. Rink intentionally disrupted the trial proceedings and stated that I had threaten[ed] jurors, causing all jurors to be s[e]quester[ed]." *Petition* (Doc. 1, PageID# 16).  As for the requested 9-1-1 tape, Petitioner maintains that the tape will establish his actual innocence.  Petitioner acknowledges that his attorney had a copy of the 9-1-1 tape, but he complains that the State has refused him access to the tape.  (Doc. 9, PageID# 953-54); *see also Petitioner's Opposition to Respondent's Motion to Dismiss and Motion for Evidentiary Hearing (*Doc. 13, PageID# 983).  Petitioner further argues that a transcript of the recording will show that police lied, forced or threatened the alleged victim to testify against him, and that they violated the Fourth Amendment in entering his home.

Respondent opposes Petitioner's requests, taking the position that neither the *voir dire* proceedings nor the 9-1-1 recordings were ever transcribed and are therefore not in the possession of the Respondent.  *See Respondent's Reply to Petitioner's Opposition to*

*Respondent's Motion to dismiss, and Respondent's Opposition to Petitioner's Motions for appointment of Counsel and Release of Exculpatory Evidence* (Doc. 10). The record establishes that *voir dire* proceedings were not transcribed. *See Trial Transcript* (Doc. 8-3, PageID# 672)(indicating that "the impaneling of the jury was held on the record. However, it was not transcribed.") Additionally, Respondent argues that the expansion of the record requested by Petitioner will violate *Cullen v. Pinholster*, 563 U.S. at 170, and is not appropriate under Rule 6 of the Rules Governing Section 2254 Cases in the United States District Courts.

The discovery processes authorized by the Federal Rules of Civil Procedure do not automatically apply to habeas corpus proceedings. "A judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery." Rule 6 of the Rules Governing Section 2254 Cases in the United States District Courts. Under this "good cause" standard, a district court should grant leave to conduct discovery in habeas corpus proceedings only if "'specific allegations before the court show reason to believe that the petitioner may, if the facts are more fully developed, be able to demonstrate that he is. . . entitled to relief. . . .'" *Bracy v. Gramley*, 520 U.S. 899, 908-09 (1997)(quoting *Harris v. Nelson*, 394 U.S. 286, 300 (1969)). *See also Standford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001). Moreover, Rule 7 of the Rules Governing Section 2254 Cases in the United States District Courts also permits federal habeas courts to direct the parties to supplement the state court record with materials relevant to the Court's resolution of the petition:

> (a) In General. If the petition is not dismissed, the judge may direct the parties to expand the record by submitting additional materials relating to the petition. The judge may require that these materials be authenticated.
>
> (b) Types of Materials. The materials that may be required include letters predating the filing of the petition, documents, exhibits, and answers under oath to written interrogatories propounded by the

> judge. Affidavits may also be submitted and considered as part of the record.
>
> (c) Review by the Opposing Party. The judge must give the party against whom the additional materials are offered an opportunity to admit or deny their correctness.

However, the decision whether to order an expansion of the record under Rule 7 falls within the sound discretion of the district court. *Ford v. Seabold*, 841 F.2d 677, 691 (6th Cir. 1988). Such expansion must be limited by the relevance of the proffered materials to the constitutional claims presented.

This Court concludes that Petitioner has failed to establish good cause for his requests for production of a copy of the transcripts of *voir dire* proceedings or the 9-1-1 calls. For the reasons discussed below, this Court concludes that all of Petitioner's claims are procedurally defaulted, time-barred, or otherwise fail to provide a basis for federal habeas corpus relief. For example, Petitioner did not previously raise a claim under *Batson*, and that issue is therefore not properly before this Court; Petitioner's claim of the denial of his right to a speedy trial is time-barred; the Fourth Amendment does not offer a basis for federal habeas corpus relief, *see Stone v. Powell*, 428 U.S. 465, 482 (1976); *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982)(opportunity for full and fair litigation of a Fourth Amendment claim exists where the state procedural mechanism presents an opportunity to raise the claim, and presentation of the claim was not frustrated by a failure of that mechanism); and Petitioner did not request a copy of the transcript of *voir dire* proceedings until November 10, 2011, *i.e.,* after the state appellate court's June 30, 2011, dismissal of his direct appeal and after the trial court's denial of his petition for post conviction relief. *See Motion to Prepare Transcripts of Proceedings at State Expense* (Doc. 8-1, PageID# 406). Petitioner's direct appeal, in which he was represented by counsel, had not implicated the *voir dire;* the trial court therefore denied Petitioner's request for the transcripts of

*voir dire* proceedings, reasoning that Petitioner had no right to a second appeal or to supplemental transcripts. *Entry* (Doc. 8-1, PageID# 412). Petitioner did not file an appeal from that decision. In December 2012, and after the filing of his appeal in Rule 26(B) proceedings to the Ohio Supreme Court, Petitioner again requested a copy of the transcript of *voir dire* proceedings. *Id.* (PageID# 327). Notably, however, Petitioner did not raise any issue relating to *voir dire* proceedings in his direct appeal or in his untimely Rule 26(B) application. Additionally, Petitioner had access to the 9-1-1 tape through his defense counsel. Although neither of the parties sought to introduce the recording of the 9-1-1 calls, evidence regarding the nature and content of the 9-1-1 calls was submitted at trial, and there is simply no reason to believe that further expansion of the record to include the transcript of the 9-1-1 calls will assist Petitioner in establishing his claims.

Karen Monroe, the victim in this case, testified that, in the early morning hours of April 16, 2008, she called 9-1-1 three times. According to the victim, Petitioner took the phone out of her hand the first time, informed police that "everything was okay and hung up." *Trial Transcript* (Doc. 8-3, PageID# 677).

> And I think I called them back the second time. But on the third time, the phone kind of laid sideways on the bed. And so I hit 911, and the phone was open, and they heard me screaming.

*Id.* Thus, although the victim never had an actual conversation with the 9-1-1 dispatcher, she testified that she called 9-1-1 for help. *Id.* (PageID# 678). The victim also testified that Petitioner would not let her leave, and covered her face with a pillow and tried to suffocate her because she was screaming. According to the victim, she screamed so that the 9-1-1 dispatcher would hear her voice and send help. *Id.* (PageID# 678-79). When the police approached the door, Petitioner turned off all the lights and would not permit her to answer. The police

eventually opened the door with a battering ram. Petitioner put his arm around the victim's neck on the couch and told her not to move, that everything would be okay, and that they would get some crack later. *Id*. (PageID# 679-80). The victim asked the police to kick the door in, because she could not open it. *Id.* (PageID# 682-83). When the police entered the residence, the victim was crying and hysterical; she told the police that Petitioner was going to kill her. "She was completely hysterical, saying he was going to kill her, and he kept her against her will." *Id.* (PageID# 690). Officers Arauco and Ramsey broke the door down after the victim had asked them to do so. *Id.* (PageID# 687). Officer Aimee Ramsey indicated in the "U.10" police report that there had been two hang-up calls made to 9-1-1 from the home, and that a female could be heard yelling in the background. *Id.* (PageID# 688-89). The "U.10" indicated that a man had made the first 9-1-1 call. *Id.* (PageID# 773-74).

Petitioner testified that it was he who had called 9-1-1, but that the victim had snatched the plug of the telephone out of the wall. *Id.* (PageID# 811-12). When he thereafter took her car keys in order to protect her and keep her from going out to purchase more crack cocaine, she called 9-1-1. *Id.* (PageID# 816). According to Petitioner, Ms. Monroe told police to kick the door in because they could not open it. *Id.* (PageID# 819).

Petitioner acknowledges that his attorney was provided a copy of the 9-1-1 tapes. (Doc. 9, PageID# 953). Therefore, the prosecutor did not unlawfully fail to disclose this evidence to the defense. Petitioner's allegations that further discovery will assist him in establishing that police lied or that they forced the victim to fabricate the charges against him and that the prosecutor withheld material exculpatory evidence are entirely speculative, contradicted by the record, and without support. Further, Petitioner's allegations and claims related to the transcripts of *voir dire* proceedings have been waived and his claim that he was unconstitutionally denied a

transcript of *voir dire* proceedings plainly lacks merit. Petitioner's discovery requests will not assist him in establishing that he is entitled to relief. Rather, those requests amount to nothing more than a fishing expedition.

Therefore, Petitioner's motion for release of exculpatory evidence (Doc. 9) is **DENIED.**

### Statute of Limitations

Respondent contends that the action is time-barred. The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which became effective on April 24, 1996, imposes a one-year statute of limitations on the filing of habeas corpus petitions:

> (d) (1) A 1–year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of-
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State postconviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d). This Court has previously determined that Petitioner's July 26, 2011 post conviction petition tolled the running of the statute of limitations, and that the one-year statute of limitations therefore began to run on October 8, 2011. *Boddie v. Warden, Chillicothe Correctional Institution*, Case No. 2:14-cv-226, *Order and Report and Recommendation* (Doc. 11, PageID# 660), *adopted and affirmed by Opinion and Order* (Doc. 18).

> The statute of limitations ran for 237 days until, on June 1, 2012, petitioner filed another petition for post-conviction relief. . . . [T]he June 1, 2012 petition also served to toll the statute of limitations under 2244(d)(2). . . . Thus, the statute of limitations was tolled . . . from June 1, 2012 until October 27, 2013 (when the period for seeking review by the Ohio Supreme Court expired).
>
> The statute of limitations therefore resumed on October 28, 2013[.]

*Id.* (PageID# 660). Therefore, the statute of limitations ran for a period of 237 days, and began to run again on October 27, 2013. It expired 128 days later, on March 5, 2014.

On February 25, 2014, Petitioner filed his first § 2254 petition. However, on September 17, 2015, the date on which the judgment was entered dismissing that action without prejudice as unexhausted, the statute of limitations had long since expired. Moreover, the time during which Petitioner's first federal habeas action was pending did not toll the running of the statute of limitations. *See Duncan v. Walk*er, 533 U.S. 167, 181-82 (2001). Plainly, therefore, Petitioner could not have filed this second § 2254 petition (filed on August 25, 2016) prior to the expiration of the one-year statute of limitations under § 2244(d).

However, a petitioner is entitled to a "mandatory equitable tolling" of the statute of limitations, pursuant to *Palmer v. Carlton*, 276 F.3d 777 (6th Cir. 2002), if he returns to the state courts to address his unexhausted claims within thirty days of the District Court's dismissal of the case, and then returns to federal court within thirty days after exhausting those claims. *See*

*Bozsik v. Bagley*, 534 Fed.Appx. 427, 430 (6th Cir. 2013)(citing *Griffin v. Rogers*, 399 F.3d 626, 635 (6th Cir. 2005)).

> *Palmer* and *Griffin* established a form of "mandatory equitable tolling," which is applicable in situations in which the dismissal of a mixed petition could jeopardize the timeliness of a subsequent petition. Under *Palmer* and *Griffin*, if the district court fails to grant a stay, a petitioner is entitled to mandatory equitable tolling of the AEDPA period if he/she files in state court within thirty days of the federal court dismissal and returns to federal court no later than thirty days following state court exhaustion.

*Huey v. Smith,* 199 Fed.Appx. 498, 500, unpublished, 2006 WL 2860605 (6th Cir. Oct. 5, 2006). "If a petitioner fails to qualify for mandatory equitable tolling, he may still qualify for traditional equitable tolling." *McMurray v. Scutt*, 136 Fed.Appx. 815, 817, unpublished, 2005 WL 1386486 (6th Cir. June 7, 2005)(citing *Griffin*, 399 F.3d at 635).

Here, the Court dismissed Petitioner's first § 2254 petition without prejudice as unexhausted on September 17, 2015. *Boddie v. Warden, Chillicothe Correctional Institution*, Case No. 2:14-cv-226 (Doc. 32). Petitioner thereafter filed a *Notice of Appeal and Motion for Leave to Appeal in forma pauperis*. *Id*. (Docs. 33, 34). This Court issued an order declining to issue a certificate of appealability on October 19, 2015,. *Id*. (Doc. 35). On March 28, 2016, the Sixth Circuit denied Petitioner's application for a certificate of appealability and request for the appointment of counsel. *Id*. (Doc. 36). Within thirty days thereafter, on April 25, 2016, Petitioner filed a *Motion for Delayed Appeal* in the Ohio Supreme Court. (Doc. 8-1, PageID# 575). On June 15, 2016, the Ohio Supreme Court denied the motion and dismissed the appeal. *State v. Boddie*, 146 Ohio St.3d 1414 (2016); (PageID# 589). Within thirty days thereafter, on July 8, 2016, Petitioner filed a *Motion and Memorandum in Support for Notice of Exhaustion of Claim Six* and *Motion for a Certificate of Appealability and Motion for the Appointment of*

*Counsel,* notifying this Court that he had exhausted his state court remedies. *Id.* (Doc. 38).[2] On July 21, 2016, this Court advised Petitioner that he must file a new habeas corpus petition "if he believes that he has meritorious claims to present to the Court regarding his conviction and that he has now properly exhausted these claims[.]" *Id.*, *Order* (Doc. 41). On August 25, 2016, Petitioner filed this second habeas corpus petition.

Petitioner maintains that he has acted diligently in pursuing relief. He alleges that prison officials have denied him access to the courts by delaying his mail and by confiscating his legal materials when he was released from prison. *Petitioner's Opposition to Respondent's Motion to Dismiss and Motion for Evidentiary Hearing* (Doc. 13, PageID# 79-80).

Respondent contends that the mandatory equitable tolling rule of *Palmer* does not apply to these facts, because Petitioner filed an appeal from this Court's dismissal of his first § 2254 petition as unexhausted and did not immediately proceed to exhaust his claim in the Ohio courts. *Return of Writ* (Doc. 8, PageID# 74). Respondent's contention in this regard is unpersuasive. Respondent does not refer to, and this Court has been unable to locate, any cases supporting that contention. Furthermore, to adopt that contention would be to unfairly penalize a petitioner for pursuing his right to appeal from the judgment of this Court. Under the particular circumstances presented in this case, the Court concludes that Petitioner exercised reasonable diligence in pursing his rights upon the dismissal of his first unexhausted § 2254 petition. Moreover, Petitioner attempted to return to this Court (by filing his *Motion and Memorandum in Support for Notice of Exhaustion of Claim Six* and *Motion for a Certificate of Appealability and Motion for the Appointment of Counsel*) within thirty days of the Ohio Supreme Court's dismissal of his

---

[2] Petitioner represented that, on May 19, 2016, he contacted the Office of the Ohio Public Defender, which advised him on July 5, 2016, that Petitioner should file this motion in the earlier habeas action. *See Boddie v. Warden, Chillicothe Correctional Institution*, Case No. 2:14-cv-226, *Affidavit of Howard Boddie, Jr.* (Doc. 40, PageID# 1646-47).

motion for a delayed appeal. *See, e.g., Sueing v. Palmer*, 503 Fed.Appx. 354, 357, unpublished, 2012 WL 5290284 (6th Cir. 2012)(District Court should have interpreted petitioner's letter referring to exhausted claims, as new habeas petition filed within the limitations period). Under these circumstances, this Court is persuaded that Petitioner has met the "mandatory equitable tolling" provisions of *Griffin* and *Palmer*. The dismissal of this action as time-barred is not warranted.

That said, Respondent correctly notes that Petitioner did not raise any claim regarding the denial of the right to a speedy trial in his first § 2254 action. *See Boddie v. Warden, Chillicothe Correctional Institution*, No. 2:14-cv-226, Petition (Doc. 1). That particular claim is therefore time-barred and will not now be considered by this Court.

### Claims One, Two, and Five

In claim one, Petitioner alleges that the trial court unconstitutionally denied his petition for post conviction relief without conducting an evidentiary hearing. In claim two, Petitioner alleges that the trial court abused its discretion and unconstitutionally denied his post conviction claims as barred under Ohio's doctrine of *res judicata*. In claim five, Petitioner alleges that he was prejudiced and denied access to the courts and was denied equal protection and due process when the Ohio Supreme Court refused to permit him to file an untimely post conviction appeal because it was one day late. These claims do not offer a basis for federal habeas corpus relief. "[H]abeas corpus cannot be used to mount challenges to a state's scheme of post-conviction relief." *Leonard v. Warden*, 846 F.3d 832, 854 (6th Cir. 2017)(citing *Greer v. Mitchell*, 264 F.3d 663, 681 (6th Cir. 2001)(citing *Kirby v. Dutton*, 794 F.2d 245, 246 (6th Cir. 1986); *Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir. 2007)). "[T]he Sixth Circuit has consistently held that errors in post-conviction proceedings are outside the scope of federal habeas corpus review." *Farrow*

*v. Anderson*, No. 1:08CV1429, 2009 WL 3004024, at *5 (N.D. Ohio Sept. 15, 2009) (citing *Kirby v. Dutton*, 794 F.2d 245, 246-47 (6th Cir. 1986); *Roe v. Baker*, 316 F.3d 557, 571 (6th Cir. 2002)).  This is because "'the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and. . . the traditional function of the writ is to secure release from illegal custody.'"  *Id.* (quoting *Kirby,* 794 F.2d at 246 (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973))).

> It is settled law in the Sixth Circuit that alleged errors in post-conviction proceedings, such as the failure to grant evidentiary hearings, are outside the scope of federal habeas review. *Cornwell v. Bradshaw*, 559 F.3d 398, 411 (6th Cir. 2009) (petitioner's claim that the state court improperly denied him an evidentiary hearing not cognizable in habeas corpus proceedings); *Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir. 2007); *Kirby v. Dutton*, 794 F.2d 245, 247 (6th Cir.1986) ("We decline to allow the scope of the writ to reach this second tier of complaints about deficiencies in state post-conviction proceedings.").

*Johnson v. Lazaroff*, No. 1:15CV43, 2016 WL 791609, at *15 (N.D. Ohio Jan. 6, 2016).  "Claims of denial of due process and equal protection in collateral proceedings are not cognizable in federal habeas because they are not constitutionally mandated."  *Knauff v. Hooks*, No. 1:15-cv-338, 2016 WL 2587965, at *14 (S.D. Ohio May 4, 2016)(citations omitted).

Claims one, two, and five fail to warrant relief.

### Claim Three

In claim three, Petitioner alleges, *inter alia*, that he has been denied due process, equal protection, and meaningful access to the courts because the State has refused to provide him with a copy of the transcripts of *voir dire* proceedings free of cost.  This claim plainly fails to provide a basis for federal habeas corpus relief.

"[T]o satisfy the commands of the Equal Protection Clause, states may not condition the exercise of basic trial and appeal rights on a defendant's ability to pay for such rights."  *Riggins v. Rees*, 74 F.3d 732, 735 (6th Cir. 1996)(citing *Griffin v. Illinois*, 351 U.S. 12, 19 (1956)).  In

cases involving an indigent defendant's claim to a free transcript, a court must consider "the value of the transcript to the defendant in connection with the appeal or trial for which it is sought, and [] the availability of alternative devices that would fulfill the same functions as a transcript." *Id*. at 735 (citing *Britt v. North Carolina*, 404 U.S. 226, 227 (1971)). "While the outer limits of that principle are not clear, there can be no doubt that the state must provide an indigent defendant with a transcript of prior proceedings when that transcript is needed for an effective defense or appeal." *Carrion v. Wilkinson*, 405 F.Supp.2d 850, 851 (N.D. Ohio Sept. 12, 2005)(citations omitted). "The Rule [] is that an indigent petitioner must receive a free transcript if the suit is not frivolous and the transcript is needed to decide the issue presented by the petition." *Smith v. Wilson*, 2008 WL 4279884, at *2 (N.D. Ohio Sept. 15, 2008)(citing *Lane v. Brown*, 372 U.S. 477 (1963); *United States v. MacCollum*, 426 U.S. 317 (1976)).

Here, it appears that Petitioner first requested a transcript of *voir dire* proceedings in the state trial court on November 10, 2011, *i.e*., after the dismissal of his direct appeal. (Doc. 8-1, PageID# 406). Petitioner did not, apparently, request nor was he denied a free copy of the transcript of *voir dire* proceedings in connection with his direct appeal. Moreover, Petitioner did not appeal from the trial court's decision denying his request for a free transcript. On December 12, 2012, after the appellate court's denial of his Rule 26(B) application, and after the filing of his appeal from that decision,[3] Petitioner filed a request for the *voir dire* transcript in the Ohio Supreme Court. *Id.* (PageID# 327). Petitioner alleged, in the first instance, that he had been denied the effective assistance of counsel because his attorney had filed the appeal without reviewing the complete trial transcripts. *Id.* (PageID# 329). Notably, Petitioner did not raise this issue in the state appellate court or in his Rule 26(B) application. In any event, the state

---

[3] The state appellate court's *Judgment Entry* dismissing Petitioner's Rule 26(B) application indicates that his "motion for delayed reopening and motion to prepare transcripts of proceedings at state expense are denied." (Doc. 8-1, PageID# 300).

appellate court denied Petitioner's Rule 26(B) application as untimely, and the Ohio Supreme Court affirmed that decision, denying Petitioner's motion to provide a complete copy of *voir dire* transcripts as moot. *Id.* (PageID# 297; 337).

Thus, the record does not indicate that Petitioner requested, or was denied, a copy of the transcripts in connection with his direct appeal, or with any claims related to Rule 26(B) proceedings or other collateral proceedings. Moreover, the state appellate court denied his Rule 26(B) application for failure to show good cause for the untimely filing, and denied his claims in post conviction proceedings as barred under Ohio's doctrine of *res judicata*. *See State v. Boddie*, 2013 WL 4973012. Therefore, the transcript of *voir dire* proceedings would not have assisted Petitioner in obtaining relief. Under these circumstances, the record establishes that the State did not deny Petitioner a free copy of any transcript in violation of Petitioner's right to due process. *See Britt v. North Carolina*, 404 U.S. at 227.

### Claim Ten

In claim ten, Petitioner alleges that police illegally entered his home without a warrant or probable cause. This claim likewise does not provide Petitioner the federal habeas relief that he seeks. Generally, habeas corpus relief cannot be based on an alleged violation of the Fourth Amendment, so long as the petitioner had an opportunity to present the claim to the state courts. *Stone v. Powell*, 428 U.S. at 482; *Riley v. Gray*, 674 F.2d at, 526 (6th Cir. 1982)(opportunity for full and fair litigation of a Fourth Amendment claim exists where the state procedural mechanism presents an opportunity to raise the claim, and presentation of the claim was not frustrated by a failure of that mechanism.)

> One, the key purpose of federal habeas corpus is to free innocent prisoners. But whether an investigation violated the Fourth Amendment has no bearing on whether the defendant is guilty. [*Stone v. Powell*], at 490, 96 S.Ct. 3037. Two, exclusion is a prudential deterrent prescribed by the courts, not a personal right

> guaranteed by the Constitution. Any deterrence produced by an additional layer of habeas review is small, but the cost of undoing final convictions is great. *Id.* at 493, 96 S.Ct. 3037.

*Good v. Berghuis*, 729 F.3d 636, 637 (6th Cir. 2013). Ohio permits a criminal defendant to file a motion to suppress evidence prior to trial. See Ohio R. Crim. P. 12(C)(3). Further, there is no basis in the record upon which to find that Petitioner was unable to present a claim under the Fourth Amendment because of a failure of Ohio's procedural mechanism. To the contrary, after a hearing, the trial court denied Petitioner's motion to suppress evidence based on his allegation of illegal entry into his home. *See Trial Transcript* (Doc. 8-3, PageID# 675-698). Therefore, Petitioner's claim regarding the violation of the Fourth Amendment does not provide a basis for federal habeas relief. *See Davis v. Morgan*, No. 2:15-cv-00613, 2016 WL 6493420, at *9 (S.D. Ohio Nov. 2, 2016).

## Procedural Default

Respondent also contends that Petitioner has procedurally default certain claims. Congress has provided that state prisoners who are in custody in violation of the Constitution or laws or treaties of the United States may apply to the federal courts for a writ of habeas corpus. 28 U.S.C. § 2254(a). In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required to present those claims to the state courts for consideration. 28 U.S.C. § 2254(b), (c). If he fails to do so, but still has an avenue open to him by which he may present his claims, then his petition is subject to dismissal for failure to exhaust state remedies. *Id.; Anderson v. Harless*, 459 U.S. 4, 6, 103 (1982) *(per curiam)* (citing *Picard v. Connor*, 404 U.S. 270, 275–78 (1971)). Where a petitioner has failed to exhaust his claims but would find those claims barred if later

presented to the state courts, "there is a procedural default for purposes of federal habeas. . . ." *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1 (1991).

The term "procedural default" has come to describe the situation where a person convicted of a crime in a state court fails (for whatever reason) to present a particular claim to the highest court of the State so that the State has a fair chance to correct any errors made in the course of the trial or the appeal before a federal court intervenes in the state criminal process. This "requires the petitioner to present 'the same claim under the same theory' to the state courts before raising it on federal habeas review." *Hicks v. Straub*, 377 F.3d 538, 552–53 (6th Cir. 2004) (quoting *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987)). One of the aspects of "fairly presenting" a claim to the state courts is that a habeas petitioner must do so in a way that gives the state courts a fair opportunity to rule on the federal law claims being asserted. That means that if the claims are not presented to the state courts in the way in which state law requires, and the state courts therefore do not decide the claims on their merits, neither may a federal court do so. In the words used by the Supreme Court in *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977), "contentions of federal law which were not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure" also cannot be resolved on their merits in a federal habeas case-that is, they are "procedurally defaulted."

In the Sixth Circuit, a four-part analysis must be undertaken when the state argues that a federal habeas claim is waived by the petitioner's failure to observe a state procedural rule. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id.* Second, the Court must determine whether the state courts actually enforced the state procedural sanction. *Id.* Third, it must be decided whether the state

procedural forfeiture is an adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim. *Id.* Finally, if the Court has determined that a state procedural rule was not complied with, and that the rule was an adequate and independent state ground, then the petitioner must demonstrate that there was cause for him not to follow the procedural rule, and that he was actually prejudiced by the alleged constitutional error. *Id.* This "cause and prejudice" analysis applies to failures to raise or preserve issues for review at the appellate level. *Leroy v. Marshall*, 757 F.2d 94 (6th Cir. 1985).

Turning to the fourth part of the *Maupin* analysis, in order to establish cause, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Constitutionally ineffective counsel may constitute cause sufficient to excuse a procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000). In order to constitute cause, an ineffective assistance of counsel claim generally must "'be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.'" *Edwards,* 529 U.S. at 452 (quoting *Murray v. Carrier*, 477 U.S. at 479). That is because, before counsel's ineffectiveness will constitute cause, "that ineffectiveness must itself amount to a violation of the Sixth Amendment, and therefore must be both exhausted and not procedurally defaulted." *Burroughs v. Makowski*, 411 F.3d 665, 668 (6th Cir. 2005). Or, if the claim of ineffective assistance of counsel is procedurally defaulted, the petitioner must be able to "satisfy the 'cause and prejudice' standard with respect to the ineffective-assistance claim itself." *Edwards,* 529 U.S. at 450–51. The Supreme Court explained the importance of this requirement:

> We recognized the inseparability of the exhaustion rule and the procedural-default doctrine in *Coleman*: "In the absence of the independent and adequate state ground doctrine in federal habeas, habeas petitioners would be able to avoid the exhaustion requirement by defaulting their federal claims in state court. The

independent and adequate state ground doctrine ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases." 501 U.S., at 732, 111 S.Ct. 2546, 115 L.Ed.2d 640. We again considered the interplay between exhaustion and procedural default last Term in *O'Sullivan v.* Boerckel, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999), concluding that the latter doctrine was necessary to " 'protect the integrity' of the federal exhaustion rule." *Id.*, at 848, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (quoting id., at 853, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (STEVENS, J., dissenting)). The purposes of the exhaustion requirement, we said, would be utterly defeated if the prisoner were able to obtain federal habeas review simply by " 'letting the time run' " so that state remedies were no longer available. *Id.*, at 848, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1. Those purposes would be no less frustrated were we to allow federal review to a prisoner who had presented his claim to the state court, but in such a manner that the state court could not, consistent with its own procedural rules, have entertained it. In such circumstances, though the prisoner would have "concededly exhausted his state remedies," it could hardly be said that, as comity and federalism require, the State had been given a "fair 'opportunity to pass upon [his claims].' " *Id.*, at 854, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (STEVENS, J., dissenting) (emphasis added) (quoting *Darr v. Burford*, 339 U.S. 200, 204, 70 S.Ct. 587, 94 L.Ed. 761 (1950)).

*Edwards*, 529 U.S. at 452–53.

If, after considering all four factors of the *Maupin* test, the court concludes that a procedural default occurred, it must not consider the procedurally defaulted claim on the merits unless "review is needed to prevent a fundamental miscarriage of justice, such as when the petitioner submits new evidence showing that a constitutional violation has probably resulted in a conviction of one who is actually innocent." *Hodges v. Colson*, 727 F.3d 517, 530 (6th Cir. 2013) (citing *Murray v. Carrier*, 477 U.S. 478, 495–96 (1986)).

In claim three, Petitioner also alleges that defense counsel and the prosecutor tainted the jury during *voir dire* and caused juror bias. In claim four, Petitioner alleges that he was denied a fair trial based on prosecutorial misconduct because the prosecutor and police coerced and intimidated Karen Monroe into testifying against him, and police lied. In claim six, Petitioner alleges that he was denied the effective assistance of trial counsel based on his attorney's failure to investigate, prepare a defense, or consult with him prior to trial. In claim seven, Petitioner

alleges that the police and prosecutor forced the victim to pursue the charges against him, and the prosecutor fraudulently concealed exculpatory evidence, *i.e.*, a letter dated April 23, 2008, and a document dated June 25, 2010.[4] In claim eight, Petitioner alleges that the evidence was constitutionally insufficient to sustain his domestic violence conviction. In claim nine, Petitioner alleges that the evidence was constitutionally insufficient to sustain his abduction conviction. All these claims, being readily apparent from the face of the record, should have been raised on direct appeal, where Petitioner was represented by new counsel. However Petitioner failed to raise any of these claims on direct appeal, with the exception of his claim that he was denied the effective assistance of counsel based on his attorney's failure to consult with him prior to trial. *See State v. Boddie*, 2011 WL 2586717, at *3. Further, he may now no longer present these claims to the state courts by operation of Ohio's doctrine of *res judicata. See State v. Cole*, 2 Ohio St.3d (1982); *State v. Ishmail*, 67 Ohio St.2d 16 (1981); *State v. Perry*, 10 Ohio St.2d 175 (1967) (claims must be raised on direct appeal, if possible, or they will be barred by the doctrine of *res judicata*.). The state courts were never given an opportunity to enforce this procedural rule, however, due to the nature of Petitioner's procedural default.

Petitioner also procedurally defaulted his claim of the denial of the effective assistance of trial counsel based on his attorney's alleged failure to consult with him because he failed to file a timely appeal to the Ohio Supreme Court. *See Backie v. Moore*, No. 1:13-cv-00507, 2015 WL 2137164, at *11 (N.D. Ohio May 7, 2015)(citing *Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir. 2004)). The Ohio Supreme Court denied Petitioner's motion for a delayed appeal. The United States Court of Appeals for the Sixth Circuit has held that the Ohio Supreme Court's denial of a

---

[4] Petitioner attached these documents to his *Motion for Reconsideration Pursuant to App.R. 26(B)* (Doc. 8-1, PageID# 202-223).

motion for leave to file a delayed appeal constitutes a procedural ruling sufficient to bar federal habeas corpus review. *Bonilla v. Hurley*, 370 F.3d at 497.

Petitioner also attempted, in the first instance, to present some of his claims to the state courts in his July 26, 2011, and June 1, 2012, petitions for post conviction relief; however, the trial court explicitly refused to address those claims as barred under Ohio's doctrine of *res judicata*, and the appellate court affirmed that decision. *State v. Boddie*, 2013 WL 4973012. Moreover, Petitioner never filed a timely appeal in post conviction proceedings to the Ohio Supreme Court and he may now no longer do so, because Ohio does not permit delayed appeals in post conviction proceedings. Ohio S.Ct.Prac.R. 7.01(4)(c)("The provision for delayed appeal does not apply to appeals involving postconviction relief[.]") *See, e.g., Dixon v. Warden, Richland Correctional Institution,* 2017 WL 972122, at *2 (S.D. Ohio March 13, 2017)(Petitioner procedurally defaulted his claim of the denial of the effective assistance of trial counsel where trial court denied the post conviction petition as untimely and the Petitioner failed to file a timely appeal); *Carley v. Hudson*, 563 F.Supp.2d 760, 775 (N.D. Ohio 2008)(enforcing procedural default based on the petitioner's failure to file a timely appeal in post conviction proceedings).

Moreover, Ohio's doctrine of *res judicata* is adequate and independent under the third part of the *Maupin* test. To be "independent," the procedural rule at issue, as well as the state court's reliance thereon, must rely in no part on federal law. *See Coleman v. Thompson*, 501 U.S. at 732–33. To be "adequate," the state procedural rule must be firmly established and regularly followed by the state courts. *Ford v. Georgia*, 498 U.S. 411 (1991). "[O]nly a 'firmly established and regularly followed state practice' may be interposed by a State to prevent subsequent review by this Court of a federal constitutional claim." *Id*. at 423 (quoting *James v.*

*Kentucky*, 466 U.S. 341, 348–351 (1984)); *see also Barr v. City of Columbia*, 378 U.S. 146, 149 (1964); *NAACP v. Alabama ex rel. Flowers*, 377 U.S. 288, 297 (1964). The United States Court of Appeals for the Sixth Circuit has consistently held that Ohio's doctrine of *res judicata, i.e.*, the *Perry* rule, is an adequate ground for denying federal habeas relief. *Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006*); Coleman v. Mitchell*, 268 F.3d 417, 427–29 (6th Cir. 2001); *Seymour v. Walker*, 224 F.3d 542, 555 (6th Cir. 2000); *Byrd v. Collins*, 209 F.3d 486, 521–22 (6th Cir. 2000); *Norris v. Schotten*, 146 F.3d 314, 332 (6th Cir. 1998).

Ohio courts have consistently refused, in reliance on the doctrine of *res judicata*, to review the merits of claims because they are procedurally barred. *See State v. Cole*, 2 Ohio St.3d at 112; *State v. Ishmail*, 67 Ohio St.2d at 16. Additionally, the doctrine of *res judicata* serves the state's interest in finality and in ensuring that claims are adjudicated at the earliest possible opportunity. With respect to the independence prong, the Court concludes that Ohio's doctrine of *res judicata* in this context does not rely on or otherwise implicate federal law. Accordingly, the Court is satisfied from its own review of relevant case law that the *Perry* rule is an adequate and independent ground for denying relief. The Court concludes, therefore, that Petitioner has waived claims three, four, and six through nine for federal habeas corpus review.

Petitioner may still secure review of the merits of these claims if he demonstrates cause for his failure to follow the state procedural rules, as well as actual prejudice from the constitutional violations that he alleges. "[P]etitioner has the burden of showing cause and prejudice to overcome a procedural default." *Hinkle v. Randle*, 271 F.3d 239, 245 (6th Cir. 2001) (citing *Lucas v. O'Dea*, 179 F.3d 412, 418 (6th Cir. 1999) (internal citation omitted)). A petitioner's *pro se* status, ignorance of the law, or ignorance of procedural requirements are insufficient bases to excuse a procedural default. *Bonilla v. Hurley*, 370 F.3d 498. Instead, in

order to establish cause, a petitioner "must present a substantial reason that is external to himself and cannot be fairly attributed to him." *Hartman v. Bagley*, 492 F.3d 347, 358 (6th Cir. 2007). Petitioner has failed to do so here.

Petitioner's claim of the denial of the effective assistance of appellate counsel cannot constitute cause for Petitioner's procedural default, since the state appellate court denied Petitioner's Rule 26(B) application as untimely, and that claim is likewise procedurally defaulted. *See Edward,* 529 U.S. at 451-52. The Sixth Circuit has recognized that the timeliness requirement of Ohio Appellate Rule 26(B) is an adequate and independent state ground for denying relief. *Fautenberry v. Mitchell*, 515 F.3d 614 (6th Cir. 2008).

The United States Supreme Court has also held that a claim of actual innocence may be raised "to avoid a procedural bar to the consideration of the merits of [a petitioner's] constitutional claims." *Schlup v. Delo*, 513 U.S. 298, 326–27 (1995). "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Murray,* 477 U.S. at 496. In *Schlup,* the Supreme Court held that a credible showing of actual innocence was sufficient to authorize a federal court in reaching the merits of an otherwise procedurally-barred habeas petition. *Schlup*, 513 U.S. at 317. However, the actual innocence claim is "'not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits.'" *Id*. at 315 (quoting *Herrera v. Collins*, 506 U.S. 390, 404 (1993)).

The actual innocence exception to procedural default allows a petitioner to pursue his constitutional claims if it is "more likely than not" that new evidence – not previously presented at trial – would allow no reasonable juror to find him guilty beyond a reasonable doubt. *Souter*

*v. Jones*, 395 F.3d 577 (6th Cir. 2005). The Court of Appeals for the Sixth Circuit explained this exception as follows:

> The United States Supreme Court has held that if a habeas petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims." *Schlup*, 513 U.S. at 316, 115 S.Ct. 851, 130 L.Ed.2d 808. Thus, the threshold inquiry is whether "new facts raise[ ] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial." *Id*. at 317, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808. To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id*. at 327, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808. The Court has noted that "actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States,* 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence— whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324, 115 S.Ct. 851, 130 L.Ed.2d 808. The Court counseled however, that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.'" *Id*. at 321, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808.

*Souter,* 395 F.3d at 589–90 (footnote omitted). Petitioner does not meet these standards here. After an independent review of the record, the Court does not deem this to be so extraordinary a case as to relieve petitioner of his procedural default.

### Recommended Disposition

Therefore, the Magistrate Judge **RECOMMENDS** that Respondent's motion to dismiss (Doc. 8) be **GRANTED**, and that this action be **DISMISSED.**

Petitioner's motions for the appointment of counsel, for the release of exculpatory evidence, and for an evidentiary hearing (Docs. 9, 13) are **DENIED**.

Respondent's *Motion to Strike Petitioner's Notice of Supplement to the Record* (Doc. 15) is **GRANTED**.

## Procedure on Objections

If any party objects to this *Report and Recommendation*, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. 636(B)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

 *s/ Norah McCann King*
Norah McCann King
United States Magistrate Judge

May 15, 2017